P&I Underwriters v. Atlantic Specialty Insurance Company Okay, Mr. Staines. Good morning, Your Honors. May it please the Court, Tony Staines on behalf of Atlantic Specialty Insurance Company, the hull underwriter for L&L Oil as owner and the motor vessel Angela Ray. Your Honors, this is a question of application of a P&I or hull and machinery insurance policy to claims as a result of losses associated with the sinking of the motor vessel Miss Dorothy. Doesn't it all come down to which vessel was the tow? Isn't that the key question? That is the key question, whether the Miss Dorothy is in the tow or is the Miss Dorothy towing or assisting in the towing of the barge, which we suggest is just the tow, the barge FSB 101, which is the object of the tow. The definitions of tow and towing tell us that the tow is the object of that which is being pushed, pulled, or hauled alongside. And the towing vessel is that which is pushing, pulling, or hauling alongside an object. It doesn't have to be just a vessel. It can be an object, as the Shell versus Tesla case tells us. And your position, as I understand it, is that the Dorothy was not the tow of the Angela because the Dorothy didn't rely on Angela for propulsion. Is that right? That is partly correct. The Miss Dorothy was in the tow. Excuse me. The Miss Dorothy was assisting in the towing. And I think that it's important to compare. Explain that. Yes. Well, what happened was CGB, which charted all of these three vessels, they had been all three towing and assisting and towing of barges for several weeks. On this particular day, the reason the Angela Ray became the pushing vessel at the stern of the barge is because it just happened to be, by happenstance, in a position where it was easier to put it there, and the other two vessels came alongside. That whole configuration changed on all these various tows. So one day, the Angela Ray could have been assisting and the Miss Dorothy would have been pushing a stern. So, yes, Your Honor. Yeah, I'm trying to find out exactly what the Dorothy was doing. The Dorothy was assisting. This is the key. It had propulsion. It had power. It was on the starboard side of the barge. If I can just quickly tell you, and I think you probably see it, the configuration is such that the barge is ahead, the Angela Ray is behind it with lines on it pushing it, and the Freedom is on the port side, and the Miss Dorothy is on the starboard side of the barge. Okay? And they have lines on the barge.  Yes, ma'am. Yes, Your Honor. So the Miss Dorothy has propulsion and it has steerage, and it is assisting the flotilla, which is a point that we need to talk about. The flotilla is the entire unit of the tug, the three tugs, and the barge, which is being towed. But the flotilla, the word flotilla and the word tow are not synonymous. Just because you have a flotilla and there is a primary tower doesn't mean that the assist towers are in tow. They are, to get to your point, Judge Raveley, the Miss Dorothy is providing propulsion and providing steerage. It's the two assist tugs are primarily making sure that the sail line is staged. They stay on the sail line. They stay on the line they are supposed to be on going ahead, even through bridges. What happened is when the Miss Dorothy cut its starboard engine to change its fuel filters without telling anybody necessarily what it was doing, the sail line changed, and that's important because Well, I'm hearing you saying that the Dorothy was one of the tugs and nothing is a tug. No, the Miss Dorothy was one of the tugs. It's a helper tug or an assist tug. Helping tug. Helping the tug move the barge, which is in tow. The Miss Dorothy is not in tow. It may be a tug and the tow both. I don't think. I agree with you. The tow is the barge ahead, and the Miss Dorothy is the tug assisting and pushing that and moving that barge, the tow, forward. It seems to me like all three of them were tugs. The three tugs are tugs. The barge is the tow. The three tugs are moving the tow, the barge. Let me give you an example to try to help you understand the Chitty case, which has been cited by both sides. The Chitty case involved the Valley Voyager tug moving 24 barges ahead. That was the tow. A fuel flat was put alongside of the Valley Voyager on the starboard side because it was going to fuel the Valley Voyager as they proceeded. The Tideland vessel was going to come along and remove and take away the fuel flat after it had finished its mission of fueling the Valley Voyager. They're proceeding up the river, or the waterway that they were on. And the Tideland boat was moving quicker than anticipated, so it came along and tied itself to the Valley Voyager's port side to hip up just for the ride down until the fueling mission was finished. Now, that is a tug, and is that tug in tow? And the answer is yes. The court found it was in tow because it wasn't providing any propulsion, it wasn't providing any steerage, it is basically a dead vessel on the side which was being towed. That's not what the Miss Dorothy was. The Miss Dorothy was a vessel tug providing steerage and propulsion to push the tow. That is the big difference. Now, and your honors, the importance is that this is not an eight corners rule case, as P&I underwriters have suggested, and you just look to this allegation that there's a lead tug and therefore the lead tug means there's a towage and every vessel in the flotilla is in the tow. That is a fallacy. You look to the facts. In fact, the case relied upon by P&I underwriters to say this is an eight corners case and you just look to the allegations of the complaints is vacated. Rather, there's a Fifth Circuit case from 2009, the Martco v. Wellens case, that tells us in a coverage case, this isn't a duty to defend case, this is a duty to indemnify case. It's a coverage case. And we look to the facts and the evidence and apply the law to that facts and evidence. With due respect to the district court, your honors, we feel that Judge Feldman erred in his analysis. This is not a liability case trying to determine the liability of the various vessels in the flotilla. You know, it's not a liability of, well, because the Angela Ray was the primary tug and Ms. Dorothy was a helper tug, that automatically leads to questions of application of a lead tug analysis and liability. Those cases deal with liability analysis, not is a vessel in the flotilla actually in tow. Okay. You said that Dorothy cut her engine to change out the fuel filter and didn't tell anybody, so she was not providing propulsion at that moment? Yes. And that caused, no, the port engine was still good, was still functioning. But what it did was it put, because it cut the starboard engine, automatically the flotilla veered to the starboard, and that's what caused the elision. And, again, your honors, getting back to Judge Feldman's ruling, he determined and based his analysis on the fact that the Angela Ray was the lead tug and therefore the dominant mind of the flotilla. Well, first of all, he says that was uncontested. That is incorrect. What the record does show is that the Atlantic Specialty, in response to the motion for summary judgment by the P&I underwriters, admitted that there was an allegation that the Angela Ray was the lead tug. It did not admit that it was the lead tug. In fact, in the underlying case, L&L, represented by separate counsel, disputes that Angela Ray was the lead tug. Instead, they claim that there was shared responsibility by the tugs, which we suggest was the case. And, therefore, the dominant mind theory that Judge Feldman relied on is misplaced. The Plains pipeline case, your honor, provides some insight into the problems with the dominant mind theory and also provides, your honors, with some clarity, with some further confusion as to the use of the term flotilla and the use of the term tow. In the Plains pipeline case, I'll just quote real quick. It says, generally, when the tug supplies the motive power, she becomes the dominant mind and the tow is required to follow directions from the tug. The tow is required to follow directions from the tug. Then there's some cases cited. And then it says, in that case, the tug is responsible for the safe navigation of the flotilla and has a duty to exercise such reasonable care and skill as a prudent navigator would exercise under similar circumstances. It went from tow to flotilla. The problem is that, in that case, that was a two-barge flotilla, the tower and the tow, the towing vessel and the vessel barge being towed. So instead of using the word tow in that second quotation, it adopted the term flotilla and, I think, confused things. And what Judge Fellman went off on is that there's language in this pipeline, Plains pipeline, as well as some other cases that talk about the dominant mind or lead tug has an obligation to provide safe navigation to the flotilla. Well, the problem with that is I think that the word flotilla is used improperly and it should have been to the tow. But even if it's to the flotilla, understand that in helper tug cases, and there's a plethora of them, the anthracite, we cited them all in our brief, you're dealing with helper tugs that provide propulsion. They're helping. That's why they're there. They're helping to guide the flotilla and those objects or vessels that are being towed to make sure they are transported safely. Okay? And when these helper tugs come in to provide either propulsion, additional power, or steerage or both, you know, they're part of the flotilla and they're not. None of these helper tug cases talk about subject to the or being the tow. They're talking about them, those helper tugs, which is what the misdorothy was, providing a source of power, a source of steerage to make sure that the object being towed or the vessel being towed is transported safely. So there may be, in all honesty, an obligation or responsibility, as the cases refer to, to the safe transit of the flotilla. But that doesn't mean that because the dominant or primary tug, and let's assume for the sake of discussion that the Angela Ray was a primary tower, it was, but not necessarily a lead tug, but it was primarily responsible for the tow. And then to adopt Judge Feldman's analysis that it was the lead tug or the dominant mine that had a responsibility to provide, to transit the flotilla safely. Again, okay, so there's a responsibility actually in all these cases because the lead tug dominant mine case is a rebuttable presumption. And these cases talk about that the tow has a responsibility as well. And it can be, the tow can even be the dominant mine. And so all of these tugs or vessels that are involved in the flotilla are looked to in the comparative fault analysis to determine whether they have liability or not. And in that case, then if the misdorothy has some responsibility as well, even though it is an assist tug in the flotilla, we suggest to your honors that you look to what the activity is of each vessel in the flotilla. You look to what the misdorothy was actually doing and what control the misdorothy had. That's what you look to, and that's what the plains pipeline cases and the Dow tug Thomas Allen case tell us. It's a matter of control in determining the towing responsibilities and the responsibilities of the tug and the tow. So here the misdorothy providing motor power and steerage is not that like the Thailand where you surrender yourself to a vessel to be pushed or towed or hauled. This tug, the misdorothy, was providing as a helper tug, towing services, just like the Angela Ray was in a sense, even though it was assisting, it's still providing towing services. So the dorothy was neither the dominant mind nor the tow. Is that right? Well, there's a question still, your honor, as to who's the dominant mind. It definitely, the misdorothy definitely was not the tow. The misdorothy was one of the towing vessels. I think that's the best way to answer your question. And if you need further, I'll be happy to try to address it further. Well, are you saying that in terms of sort of taking the lead, those are my words, not the term of art, in sort of taking the lead or having control, are you saying the Angela and the dorothy were of equal status or was the Angela more in the lead? The Angela was more in the lead, undoubtedly. The Angela was more in the lead and the other two were the helpers. So you've got a primary vessel and helpers, but they're all playing a role in the towage. My time is up, your honor. I have five minutes set aside. Yes, you've saved time for rebuttal. Thank you. Mr. Morris. Good morning, your honors. Harry Morris on behalf of the P&I Underwriters. The first thing that I'd like to address is whether or not this case is on the eight corners doctrine. The answer to that is yes. It was yes in front of the district court. It wasn't contested. It wasn't contested in the original appeal brief. It wasn't contested in the reply. Excuse me, it wasn't contested until the reply brief. There are about a half dozen cases that are cited in my brief in this case on indemnity policies. And those cases all hold that even though they're indemnity policies, the duty to reimburse defense costs is not materially different from the duty to defend. There's one case that's contrary, which is Pender against Holt versus certain underwriters and Lloyds. And that case is different because in that case there's specific policy language that says, no, no, no, in this case, duty to reimburse defense costs is based on the facts. In every other case, it's same, same. So the question in front of this court is what are the allegations against the Angela Ray and our mutual insured L&L? Nothing more than that. If it were otherwise, if this were in fact to be based on the facts, then I'd suggest this is premature, and what we really ought to do is wait until we find the facts at a trial. And the next time a case like this comes up, what I'll recommend to my client that we do is we just wait and see what the judge says. And if we have a really good liability case, then, you know, we win at the end and we're not responsible for defense costs because we weren't liable in the first place. I'd suggest that that would be a really good outcome for my client and a terrible outcome for the insurance market. Given that this is an eight corners case, the question is what are the allegations against the Angela Ray? And, Your Honor, you suggested that you can't be both the tug and the tow, which makes sense. But the definition of towage in Stevens v. the White City is vessels having motive power often employ auxiliary power to assist them in moving about harbors and docks, which is to say one vessel surrenders not completely, but some amount of its steerage to another vessel. And those are precisely the allegations in the complaint filed by the Miss Dorothy against the Angela Ray. Specifically, the Miss Dorothy alleges that the Angela Ray had the affirmative obligation to keep the Miss Dorothy off of this bridge fender system, and it failed in that responsibility. And it specifically alleges that the Angela Ray was the lead tug responsible for coordination of the tow. And the significance of that is this. The lead tug, to the lead tug, the entire flotilla becomes the tow. Mr. Staines draws a distinction between the flotilla and the tow. But that distinction is missing from the hull policy. The hull policy talks about tow, and it talks about tow in broad terms. The tug is responsible for the tow. Now, the hull policy covers in the world of things that go wrong in the water, personal injury, P&I. Two vessels collide, hull policy. Something happens to the tow, that's going to be the hull policy. The tow does something to somebody else, that's going to be the hull policy. So that leaves, and it's for weird historical reasons that hull policies came first. It was developed this way, but if there's no contact, if one vessel swamps another with water, that's going to be P&I. If there is a passing arrangement that goes awry, but there's no contact, there's no collision, that's going to be P&I. Outside of that, it's going to be under the hull policy. And what that provides is ultimately a reasonably clear line. If the allegations against the insured vessel are, you took on additional responsibility for my safety and my navigation, and you breached those duties, that's going to be under the hull policy for towers. If it's not, if the duty of every vessel owes every other vessel on the water, that's going to be a P&I risk. It's not materially a difference between tort and contract, which is to say, tort duties are those duties owed to everybody else, and contract duties are those duties that are separately assumed. What that provides is a nice clear line that allows us to separate one case from another. Now, the assist tug line of cases would have merit if the Miss Dorothy said, you know what, we are in fact the assist tug, we are responsible for our navigation. It's our duty to stay off of the bridge fender system, and it's our duty to keep this whole flotilla off of the bridge fender system. But it didn't do that. The specific allegation is that the angular waver is responsible for the Miss Dorothy. And if you go back far enough in time, you'll find the Second Circuit case, Lee and Wilkes-Barre Coal Company, where in 1925, there was a much narrower collision and torus provision in the whole policy. And the Second Circuit said, well, under this narrow language, if you run your toe aground on rocks, that's not a collision. And in response to that, the insurance market responded, and the insurance market responded with an extended collision and torus liability policy, which is the exact language that since then has been in existence, and the same language we're dealing with here today. And that's any loss or damage to her toe. There's no distinction in the whole policy between, well, your toe only means vessels under power. Nor could there be, because that would be contrary to the definition of toeage. There's no distinction about only the part of it that pays you. And ostensibly, when it comes to payment, the lead tug will get compensated for the additional risks and the additional responsibilities it takes on. And absent some sort of clear line like that in the whole policy, which certainly hell-under-adows would be free to add, but absent some sort of exclusion like that, they signed up for a risk that the lead tug is responsible for the entire flotilla. The dominant mind theory has been the case since time immemorial, in effect. And everybody knows the dominant mind is responsible for the whole flotilla. And not just that.  But in all these cases, flotilla and toe are used interchangeably because they are, for all intents and purposes, the same thing. Your Honors, I know I have a decent amount of time left, but unless there are questions. All right. Thank you, Mr. Morris. Mr. Stange, you've saved time for rebuttal. Thank you. Once you address Mr. Morris' statement that the whole policy makes no particular distinction for vessels under power, it doesn't really distinguish vessels under power as such. Yes. I don't think that, well, it depends on what you mean by under power. For instance, what the whole policy does say is her toe. So the determination is what is her toe. What is the toe? And we suggest if you look at the Chitty case, even though the Chitty had the ability to be under power, and in fact it had its engines in neutral. They termed it another way, but essentially in neutral. The Tideland vessel in Chitty had power, but it was in neutral. It was not assisting in the propulsion and the powering of the toe. It wasn't doing anything with that 24 barge toe ahead. It wasn't providing steerage. It was essentially sitting, just like the FSB-101 in our case is sitting. It's a dumb barge, not manned, sitting ahead of the towing vessels, and it's being transported from one location to another. That's the definition of the toe. The Miss Dorothy, on the other hand, doesn't fit the definition of the toe. It is not being towed from one location to another. It is towing. It is providing power through its engines, and it is providing steerage through its rudders so that the barge being towed can get to its location. So that's the distinction between toe and towing. That is what's important. Not the dominant mind, and I'll address that in a second, but let me address, counsel said something about whole policy does not save flotilla. It does not. We agree. Judge Riva, you started out with isn't this a matter of is it toe or not toe, or toe or towing, and that's precisely what this is all about, and the dominant mind cases deal with fault and liability assessment, not coverage, and it doesn't determine whether any of the vessels in the flotilla are actually in the toe. It talks about the duties of the dominant tug and the lead tug, which is disputed by Atlantic Specialty as to whether the Angela Ray was a lead tug or not. So we are in a situation where the Miss Dorothy had crew aboard to do certain things, and we look to its activities, and in handling its propulsion power and in handling its steerage when it cut its engines, that shows you that it had ability to do things relative to the towing. In the record, there is the statement of uncontested material facts by Atlantic Specialty in reference to its motion for summary judgment. I'd like to read a few of those to give you an idea of what is factual in this case, and all of these were admitted by P&I underwriters. The motor vessel Miss Dorothy is a towing vessel owned and operated by Western Rivers Boat Management, Inc. Secondly, on December 29, 2013, the MV Miss Dorothy was under charter with Consolidated Grain and Barge, CGB, to transport barges up and down the Mississippi River. Thirdly, on December 29, 2013, the Miss Dorothy was assisting in the towage of the FSP-101 downriver. Fourth, the MV Angela Ray and MV Freedom were also assisting with the towage of the FSP-101. Number 10 of that statement of uncontested facts says, the insurers of the Miss Dorothy filed a complaint in the Eastern District of Louisiana contending that the MV Miss Dorothy, pursuant to a charter with CGB, was towing the barge FSP-101. Towing the barge, and it says FSP, it should be FSP-101. And the next one and last one I'll read is, the insurers of the motor vessel Miss Dorothy further contend that the MV Miss Dorothy was assisting the MV Angela Ray and the MV Freedom in the towage of the FSP-101. All of those were admitted facts by P&I underwriters. I have 25 seconds left, and I'd be happy to answer any questions, Your Honors. But just in closing, it's obvious that Atlantic Specialty Insurance Company suggested in looking to the proper analysis, that is the facts and the law rather than the allegations and the eight corners under the eight corners rule, that the, and looking at the cases, particularly Chitty and the assist tug, helper tug cases, that this is a matter, that Angela Ray was, was, excuse me, Miss Dorothy was towing and assisting in towage and not being towed and not the subject of the tow. All right, thank you, Mr. St. James. Thank you very much. Your case is under submission.